(September 23, 2004)

■ CARLO ALBANESE et al., Respondents, v CITY OF NEW YORK et al., Appellants, et al., Defendants. [782 NYS2d 37]—

Order, Supreme Court, Bronx County (Alexander W. Hunter, Jr., J.), entered October 12, 2003, which, to the extent appealed from, as limited by the briefs, denied defendant City of New York's motion for summary judgment dismissing the complaint, modified, on the law and on a search of the record, to deem the City an owner within the meaning of Labor Law §§ 240 and 241, and otherwise affirmed, without costs.

This is a personal injury action for damages allegedly sustained when plaintiff fell from a scaffolding (known as a stripping rig or stripping buggy) hung from a Cross Bronx Expressway ramp over the northbound Bruckner Expressway. Plaintiff claims that the scaffolding had been hung so low that his fall happened when a tractor trailer struck the bottom of the scaffolding. The work on the roadway was being done pursuant to contracts between the State of New York and DeFoe Corp. and Haks Engineering. Defendant City was not a signatory to the contract. The City moved for summary judgment claiming that Highway Law §§ 340-a and 340-b deem New York State to be the owner during the reconstruction and renovation period when plaintiff was injured. The IAS court found that the City's motion raised an issue of fact on the issue of highway ownership.

The City is vested with ownership of major highways, including those designated as interstate routes, as a matter of statute (Highway Law § 349-f). This includes approval power over all plans and specifications for reconstruction and renovation such as those involved in this case (Highway Law § 349-c [3.4]). The work here was being performed by the State under the authority of a work permit granted by the City of New York. While the City did not perform any of the actual construction work on the project, it reviewed the designs and issued permits without which the State could not proceed. The City has previously argued that its ownership is suspended during such state work, we have rejected such claim, and there is nothing in the present record which would require a different conclusion (*Deloach v City of New York*, 258 AD2d 384 [1999]). We adhere to that precedent which is consistent with the Court of Appeals' holding that the Highway Law creates joint ownership between State and City (*Nowlin v City of New York*, 81 NY2d 81, 87-88 [1993]). We have considered the remaining city claims and find them to be without merit. Concur—Buckley, P.J., Nardelli and Gonzalez, JJ.

Andrias and Williams, JJ., dissent in a memorandum by Andrias, J., as follows: Because there are, at the very least, issues of fact as to the City's status as an owner of the state-owned arterial highway work site that cannot be resolved on the present record, I would affirm the motion court's denial of the City's motion for summary judgment which sought dismissal of plaintiff's causes of action based, inter alia, upon Labor Law §§ 200, 240 and 241.

It is undisputed that plaintiff Carlo Albanese was allegedly injured on August 26, 2000 while he was working on a scaffold

(also known as a stripping rig or stripping buggy) that hung from a Cross Bronx Expressway overpass above the Bruckner Expressway in the Bronx. As he stood on the scaffold, which allegedly was hung too low, it was struck by a tractor trailer passing underneath on the Bruckner Expressway, throwing plaintiff, who was wearing a full safety harness, into the air and back down onto the scaffolding.

Plaintiffs state that there is no dispute that the accident occurred both on and above the Bruckner Expressway, approximately 206 feet south of Zerega Avenue, and that the subject scaffold was hanging from a Cross Bronx Expressway overpass above that location. Thus, they assert, the accident occurred on a "state arterial highway" located in New York City, but that "it is plainly *not* a matter of established or undisputed fact that the accident site falls within the geographic boundaries described in" Highway Law § 340-a. As plaintiffs point out and the motion court noted, the City focused solely on Highway Law § 340-a ("Designation of state interstate routes") for the proposition that the Cross Bronx Expressway and the Bruckner Expressway are state interstate routes owned by the State and did not discuss the significance, if any, of the fact that the subject area is designated under Highway Law § 349-f as a New York City route. In its reply brief, the City, for the first time, asserts that section 349-f ("New York city routes") deals with existing or proposed routes and does not state that the City is the owner of the highway, and that sections 349-c and 340-b indicate that the State is the owner for purposes of construction, reconstruction and maintenance of the interstate and arterial highways. At this point, I note that, since the enactment of the applicable statute, Highway Law article XII-B (§§ 349-b— 349-f), the State Department of Transportation has entered into arterial highway maintenance and repair agreements with various cities across the state, including New York City (*see Matter of City of New York v State of New York*, 282 AD2d 134, 135 [2001], *affd* 98 NY2d 740 [2002]), a fact apparently not implicated in the present dispute since neither party mentions it.

Although the motion court found that an issue of fact was raised on the issue of highway ownership, and plaintiff-respondent merely asks that such finding be affirmed, the majority has reached out to grant relief to a nonappealing party on the ground that "[t]he City has previously argued that its ownership is suspended during such state work, we have rejected such claim, and there is nothing in the present record

which would require a different conclusion (*Deloach v City of New York*, 258 AD2d 384 [1999])." It states that such precedent is consistent with the Court of Appeals' holding that the Highway Law creates joint ownership between State and City (citing *Nowlin v City of New York*, 81 NY2d 81, 87-88 [1993]).

*Nowlin*, however, a case involving a claim that the City negligently failed to post proper warning signs at a curve in the Henry Hudson Parkway, was decided not on the issue of who owned the parkway, but on negligent maintenance based upon the City's acknowledgment that, as contemplated by article XII-B of the Highway Law, it actually planned where the highway signs in issue were to be placed and then placed those signs. Having undertaken such duty, the City was required to perform that duty in a nonnegligent manner. Thus, the Court held that the City's argument that it could not be liable because the placement of signs on the parkway was solely a state responsibility was wholly without basis and that there was no error in the jury's finding of liability against the City (*id.* at 88). As pertinent to the issue before us, the Court of Appeals specifically found that "[u]nder article XII-B, the State is empowered to expend State or Federal funds for the purchase, design, construction or reconstruction of arterial routes running through cities (Highway Law § 349-c [1], [5], [6]), *and thereby attains ownership of such roads* (Highway Law § 349-d). Once State construction or reconstruction of an arterial highway is complete, however, the State must return 'jurisdiction' of the roadway to the City (Highway Law § 349-c [3.4]). Notwithstanding such return of jurisdiction article XII-B contemplates that the State retains continuing maintenance responsibility for State arterial highways it has constructed or reconstructed (Highway Law § 349-c [7]-[9])" (*id.* at 86-87 [emphasis added]).

The only cases relied upon by this Court in *Deloach (supra)* were *Nowlin* and *Gregorio v City of New York* (246 AD2d 275 [1998], *appeal dismissed* 93 NY2d 917 [1999]). *Gregorio* involved an automobile that, after striking another car in the rear, jumped the concrete median barrier and hit an oncoming car. Plaintiff claimed that the City was at least jointly responsible with the State for the safety of the parkway, which was part of the state arterial highway system. Both cases involved determinations made after a trial (*Nowlin*) or evidentiary hearing (*Gregorio*) and merely held that, inasmuch as the City has a concurrent duty to keep arterial highways safe and had undertaken the duty to plan where new signs were to be placed on the highway and then placed them (*Nowlin* at 88) or "replaced guardrails and median barriers on roadways with or without

State permission" (*Gregorio* at 278), the City was subject to liability to injured motorists by reason of its "nondelegable duty to the public to keep its streets and highways in reasonably safe condition" (*Gregorio* at 278 [citations omitted]). In *Nowlin*, a jury verdict against the City was upheld. In *Gregorio*, a directed verdict in favor of the City dismissing the complaint was reversed, the complaint reinstated and the matter remanded for further proceedings.

In *Deloach*, where plaintiff's fingers were crushed while she was working at a construction site on the FDR Drive between 86th and 88th Streets in Manhattan, both parties conceded that plaintiff's employer contracted with the State rather than the City for the construction work, and acknowledged that the State is the legal owner of the FDR Drive. The plaintiff moved for summary judgment on the issue of liability under the Labor Law and the City cross-moved to dismiss on the ground that it is not the "owner" of the FDR Drive within the meaning of Labor Law § 241 (6). In denying both motions, the IAS court found that article XII-B of the Highway Law does not relieve the City of its obligations with respect to the arterial highways. Instead, the court found, it " 'explicitly reserves to the City the right to make its own plans, acquire its own property, perform its own construction, and otherwise control arterial highways within City limits' *Nowlin v City of New York*, 81 NY2d 81, 87."

The motion court in *Deloach* then set forth the foregoing quotation from *Nowlin*; certain excerpts from a memorandum received in opposition to a 1971 amendment to article XII-B, which was contained in the Bill Jacket and referred to in *Nowlin* (at 88), to the effect that the City retains concurrent power over the construction of the arterial highways within its boundaries and does not refrain from exercising this power in its own interest; and the statement in *Nowlin* that when the construction of an arterial highway is completed, the State returns "jurisdiction" of the arterial highway to the City (*id.* at 86, citing Highway Law § 349-c [3.4]). Based on the foregoing, the motion court then found that the City was an "owner" within the meaning of Labor Law § 241 (6).

This Court perfunctorily affirmed the denial of the City's cross motion for summary judgment dismissing the complaint (the plaintiff did not cross-appeal from the denial of her motion for summary judgment on the issue of liability), stating that although the City was not a party to the construction contract between plaintiff's employers and the State, "it nevertheless should be deemed an 'owner' of the site for purposes of the Labor Law, because it at all times shared concurrent responsibil-

ity with the State for the safety of this arterial highway and had the right to approve all of the plans, designs and specifications for its reconstruction" (*Deloach*, 258 AD2d 384, 385 [1999], citing Highway Law § 349-c [3.1]-[3.4], [3.6]; *Nowlin, supra*; and *Gregorio, supra*).

A full reading of Highway Law § 349-c (3.1)-(3.4) and (3.6) reveals, however, that the City reserves "the right to make its own plans, acquire its own property, perform its own construction, and otherwise control arterial highways within City limits" (*Nowlin* at 88), subject to certain limitations. For instance, it may elect in advance to prepare designs, plans, etc., and such designs, plans, etc. may be prepared wholly or partly by the appropriate city agency, if the State Commissioner of Transportation shall approve. "The preparation of any such designs, plans, specifications and estimates of cost by the city shall be undertaken only when specifically authorized in advance by the commissioner," but the City may prepare designs, plans, specifications and estimates of cost at its own cost and expense for any part of such system which the City elects to construct at its own expense (subd [3.2]). In the event state funds are not available, nothing in section 349-c precludes the City from acquiring property needed for the arterial highway system in the City with its own or federal funds.

Finally, as to the state transferral of "jurisdiction" (not ownership) over a roadway upon completion of construction, section 349-c (3.4) refers only to "the completion by the state of a section or sections of *parkways* constructed by the state in the city of New York. . . . All such parkways, excepting such service roads shall be maintained by the city department of transportation as *parkways* restricted to pleasure vehicles. . . ." (Emphasis added.) Unlike the Henry Hudson Parkway (*Nowlin*), the Bronx River Parkway (*Gregorio*) and the FDR Drive (*Deloach*), all of which are restricted to pleasure or passenger vehicles, the Cross Bronx and Bruckner Expressways involved in this case are clearly not parkways.

Thus, it would appear that any question of any transferral of "jurisdiction" to the City and its impact, if any, on the issue of concurrent ownership or control (a concept not found anywhere in the statute) would not seem to apply to the facts of this case. Likewise, neither the parties nor the majority explain the significance, if any, of the City's approval of plans and issuance of permits for the reconstruction project in this case, as mandated by Highway Law § 349-c (3.2). Obviously a municipality's approval of construction plans and issuance of work permits does not make it an owner for purposes of liability under the Labor Law.

On the other hand, in *Astin v City of New York* (278 AD2d 440 [2000]), on facts more akin to this case, where plaintiff was allegedly injured while working on the reconstruction of the Meeker Avenue viaduct of the Brooklyn-Queens Expressway, the Second Department found that the City demonstrated that the State had attained " 'ownership . . . jurisdiction [and] responsibility' of the viaduct" (*id.* at 440, quoting *Nowlin, supra* at 86-87). In affirming the grant of summary judgment to the City dismissing the plaintiff's cause of action based upon a violation of Labor Law § 241 (6), the Court found that the plaintiff failed to raise an issue of fact as to whether, at the time of the plaintiff's accident, the City had any ownership, jurisdiction or responsibility of the viaduct.

Although the same could be said here, at the very least, the motion court's denial of summary judgment to both parties, based on its finding of factual issues, should be affirmed.