OPINION OF THE COURT
Carolyn E. Demarest, J.
In this action by a physician, individually and on behalf of his professional corporation, to recover monetary damages for breach of contract in failing to compensate him for services rendered to enrollees in defendants’ health care plan and for damages resulting from the non-renewal of his participation in certain health care plans in violation of Public Health Law § 4406-d, defendants EmblemHealth, Inc. (Emblem), Group Health, Inc. (GHI), and Health Insurance Plan of Greater New York (HIP) move, pursuant to CPLR 3211 (a) (7), to dismiss his amended complaint, dated November 14, 2011, for failure to state a cause of action (sequence No. 2).[1] At oral argument, de *173 fendants conceded that plaintiffs first cause of action for breach of contract does state a cause of action and withdrew the motion as to that cause of action.
Facts and Allegations
Between January 2007 and December 2010, Lawrence M. Kamhi, M.D., and his medical practice, Lawrence M. Kamhi, M.D., EC. (collectively, plaintiff), participated in the GHI and HIP health care plans in the specialties of anesthesiology and interventional pain management. Plaintiff alleges, and it is not disputed, that his participation was pursuant to a three-year contract which was “automatically renewable each year” (Ü 8).[2] In October 2010, plaintiff received written notices from Emblem, advising him that his participation in defendants’ health care plans would expire on December 31, 2010 and would not be renewed. These notices expressly state: “This decision [not to renew plaintiffs participation in the health care plans] is not related to the quality of care received by Plan members and does not involve a peer review determination; as such it is not a reportable credentialing determination.” Plaintiff alleges that defendants elected not to renew his participation solely because of his prior complaints against defendants. Plaintiff asserts that he commenced a prior action against defendants for monetary damages in the Kings County Civil Court (index No. 7240/09) in November 2009 (the collection action), upon which he obtained a default judgment in February 2010 for what he describes as multiple unpaid or denied medical invoices, and successfully opposed defendants’ motion to vacate the default judgment. Plaintiff alleges that when the judgment remained unpaid, he had legal counsel at the Medical Society of the State of New York write a letter to defendants on *174 his behalf urging them to pay the judgment, but had to hire a City Marshal before he succeeded in collecting the judgment.
Plaintiff further alleges that after he obtained satisfaction of his judgment in the collection action, defendants continued to deny his claims without justification. He states that approximately one month before his participation was not renewed, he spoke on the telephone with defendants’ senior executive of provider relations who allegedly informed him that “ ‘there was no other reason whatsoever that Emblem was not renewing [plaintiffs] in-network contract except for [plaintiff] posed too many complaints about Emblem’s claims reimbursements and even went so far as to take Emblem to Court, on one occasion’ ” (1Í1Í 37, 47) .[3]
Plaintiff alleges that his advocacy and complaints were the principal reasons why defendants failed to renew his participation in their health care plans. There is no suggestion in defendants’ motion papers that the non-renewal of plaintiff’s contract was prompted by any cause other than the complaints plaintiff has made. According to plaintiff, he was advocating for his patients when he instituted the collection action in the small claims court, as the alternative to plaintiffs recovery from defendants would be to charge the patients for these allegedly preauthorized services. In addition, plaintiff asserts that he filed written complaints with the New York State Attorney General’s Office and the New York State Department of Health “in reference to Defendants’ egregious behavior” (1Í1Í 35, 45). Lastly, he asserts that he “has requested reconsideration and review of his contract [non-renewal] with Defendants], to no avail” (1Í1Í 35, 45). Plaintiff has not, however, submitted copies of the allegedly filed written complaints and reconsideration requests, nor has he described the substance thereof in any detail.
Plaintiff s first cause of action for breach of contract appears to inappropriately articulate claims for conversion, breach of an implied duty of good faith and fair dealing, and for unjust *175 enrichment.[4] However, any deficiency in the pleading of this cause of action has been rendered moot by defendants’ withdrawal of their challenge to this cause of action.
The remaining essence of defendants’ motion addresses plaintiff’s two identical claims alleging violations of Public Health Law § 4406-d (5) by Emblem. This statute, which is quoted, with some qualification, in plaintiff’s complaint, provides:
“No health care plan shall terminate a contract or employment, or refuse to renew a contract, solely because a health care provider has:
“(a) advocated on behalf of an enrollee;
“(b) filed a complaint against the health care plan;
“(c) appealed a decision of the health care plan;
“(d) provided information or filed a report pursuant to section forty-four hundred six-c of this article; or
“(e) requested a hearing or review pursuant to this section.”
Plaintiff seeks monetary damages of at least $500,000 on each of his Public Health Law causes of action, but requests no declaratory or injunctive relief.
The Parties’ Contentions
Defendants, in support of their motion to dismiss, contend that plaintiffs second and third causes of action fail to state a claim. In particular, defendants maintain that the two protected activities upon which plaintiff relies (the patient-advocacy and the complaint-filing prongs of the statute) are both inapplicable to defendants’ decision not to renew plaintiffs participation in their health care plans. Defendants maintain that, as to the patient-advocacy prong, plaintiff’s collection efforts inured exclusively to his own benefit, rather than the promotion of his patients’ interests. Defendants further contend that plaintiff s collection action does not fall within the complaint-filing prong of the statute, which applies only to a grievance filed with a governmental body concerning the quality of, or access to, patient care.
*176 In opposition, plaintiff asserts that his collection action was a consequence of his prior numerous complaints regarding defendants’ refusal to pay him for the medically necessary, preapproved services he rendered to his patients. He maintains that by instituting the collection action and ultimately collecting on his judgment therein, he avoided billing the affected patients directly and thus provided them with quality health care at affordable prices. He posits that, from a public policy perspective, if physicians can be discontinued from a health care plan merely because they must, as a last resort, sue their health care plan for the improperly denied compensation for medical services provided to their patients, physicians might opt out of the managed care plan altogether, thus leaving their patients without access to affordable insurance coverage for the medically necessary, but unjustifiably unpaid, services, in violation of the purpose of the statute.
Discussion
Where evidentiary material is adduced in support of a motion to dismiss for failure to state a cause of action pursuant to CPLR 3211 (a) (7), “the court is required to determine whether the proponent of the pleading has a cause of action, not whether [he or] she has stated one” (Meyer v Guinta, 262 AD2d 463, 464 [2d Dept 1999]). Although “the facts pleaded are presumed to be true and accorded every favorable inference . . . , bare legal conclusions and factual claims which are flatly contradicted by the evidence are not presumed to be true on such a motion” (Palazzolo v Herrick, Feinstein, LLP, 298 AD2d 372, 372 [2d Dept 2002] [citations omitted]). Thus, if documentary evidence disproves an essential allegation of the complaint, a dismissal is warranted pursuant to CPLR 3211 (a) (7) even if the allegations, when considered alone, could otherwise withstand such a dismissal (see McGuire v Sterling Doubleday Enters., L.P., 19 AD3d 660, 662 [2d Dept 2005], lv denied 7 NY3d 701 [2006]). Defendants have not submitted any documentary evidence in support of their motion other than the notice of claim in the prior collection action which has no relevance to the Public Health Law § 4406-d claims.
Plaintiffs second and third causes of action are predicated on defendants’ alleged violation of Public Health Law § 4406-d (5) (a), (b) and (c), specifically, that defendants refused to renew his participation in their health care plans in retaliation for his advocacy on his patients’ behalf, and/or as a result of his *177 complaints about defendants’ health care plans and his efforts to obtain reconsideration of defendants’ decision not to renew. A valid cause of action for violation of Public Health Law § 4406-d (5) is stated if a health care plan refused to renew a provider’s participation contract “solely” because a provider “advocated on behalf of an enrollee” and/or because the provider “filed a complaint against the health care plan” and/or because the provider “appealed a decision of the health care plan.”[5] Under the patient-advocacy prong, a statutory violation may be found “upon a showing that patient advocacy was the determining factor in a nonrenewal decision, such that the provider would not have been terminated had s/he not engaged in the protected activity” (Lewis v Individual Practice Assn. of W. N.Y., 187 Misc 2d 812, 817 [2001]). The provider in Lewis was lobbying the defendant health care plan to develop different standards for authorizing or denying spinal surgery and to hire personnel that were qualified to make such determinations. The provider’s effort in that regard culminated in a letter from him and some of his colleagues in the same health care plan outlining their joint recommendations for a review process that was sensitive to the patients’ needs. The Lewis court held (at 817-818) that such activities constituted the type of patient advocacy that was protected under Public Health Law § 4406-d (5) (a). Here, the only indication that plaintiff was affirmatively acting on behalf of his patients in his earlier collection action is his allegation that those patients whose claims had not been paid “voluntarily appeared in Court and were ready to testify on behalf of Plaintiff’ (complaint 1Í15). No further precise information is provided regarding the nature of the treatment for which payment has been denied.
Defendants argue that plaintiff has failed to state a cause of action under Public Health Law § 4406-d (5) (a) because his primary purpose in bringing this litigation is to recover the value of services he rendered to plan enrollees on his own behalf. However, a primary stated purpose of the statute is to “prohibit ] the use of so-called ‘gag clauses’ so that physicians can fully discuss treatment options with their patients” so as to ensure comprehensive protection to health care consumers. (Governor’s *178 Approval Mem, Bill Jacket, L 1996, ch 705, at 4; see also Budget Report on Bill Jacket, L 1996, ch 705; Calabrese v HealthNow N.Y., Inc., 12 AD3d 11, 12-13 [4th Dept 2004].) According to plaintiffs allegations, by defendants’ own admission in letters and telephone conversations with plaintiff, the sole reason for the non-renewal of plaintiffs contract was that he made “too many complaints about Emblem’s claims reimbursements.” While the precise nature of the treatment rendered has not yet been revealed, a logical consequence of defendants’ decision to decline to renew plaintiffs contract is to make him unavailable to plan enrollees and to chill his, and other physicians,’ efforts to provide care to enrollees that defendants deem to be inappropriate or too expensive.[6] Moreover, since the further consequence of the denial of reimbursement to plaintiff is to place the financial burden of paying for such care upon the plan enrollee, plaintiffs challenge to defendants’ failure to make payment necessarily inures to the benefit of his patients and would thus fall within the purview of advocacy on behalf of an enrollee under the statute.
Plaintiff further contends that his participation in defendants’ health care plans was not renewed because he had filed a “complaint” by way of the prior collection action. The term “complaint,” as used in the statute, has been construed to refer to a complaint filed with a governmental body concerning the quality of, or access to, patient care (see Calabrese v HealthNow N.Y., Inc., 12 AD3d 11, 13 [2004]). Plaintiffs collection action in the small claims court does not therefore qualify as the statutorily required complaint.
However, plaintiff further asserts that he filed written complaints with the Attorney General’s Office and the Department of Health “in reference to Defendants’ egregious behavior.” Such complaints might qualify as complaints under Public Health Law § 4406-a (5) (b) if they were the sole reason for non-renewal and if such complaints concerned quality of, or access to, patient care (see Calabrese at 13).[7] Plaintiff has alleged that it was the legal counsel to the Medical Society of the State of *179 New York who suggested the possibility of a Public Health Law § 4406-d violation in defendants’ non-renewal of his contract. But, as plaintiff has failed to articulate the substance of such complaints to governmental authority, or supply copies thereof, he has failed to state a cause of action under Public Health Law § 4406-d (5) (b). This deficiency may be remedied upon service of a second amended complaint; however, plaintiffs third cause of action, which the court deems to be addressed to paragraph (b) of the statute, is dismissed without prejudice to service of a second amended complaint within 20 days.
Similarly, to the extent that plaintiff relies upon paragraph (c) of the statute, alleging that he “appealed a decision of the health care plan,” the complaint does not sufficiently articulate the details of his “request for reconsideration” of defendants’ decision so as to set forth a cause of action under Public Health Law § 4406-d (5) (c). It is not clear that plaintiff intended to specifically plead the violation of such provision; however, the court concludes that the amended complaint does not sufficiently articulate such a claim.
Conclusion
According the allegations of the complaint the deference to which they are entitled upon a motion to dismiss for failure to state a cause of action, defendants’ motion to dismiss the amended complaint is granted only to the extent of dismissing plaintiffs third cause of action premised upon Public Health Law § 4406-d (5) (b) and/or (c), and is otherwise denied.

. Subsequent to service of defendants’ motion and prior to argument, plaintiff served an amended complaint. Because plaintiffs amended complaint *173 supersedes his original complaint, defendants’ motion to dismiss will be deemed directed to, and addressed by the court with respect to, plaintiff’s amended complaint (see 49 W. 12 Tenants Corp. v Seidenberg, 6 AD3d 243 [1st Dept 2004]). Unless otherwise noted, all references are to paragraphs of plaintiffs amended complaint.

. No copy of plaintiffs participation agreement with the health care plans has been submitted to the court, and thus the record is silent as to whether the agreement contained any exceptions to the automatic renewal provision. However, the court notes that Public Health Law § 4406-d (3) provides, in relevant part, that
“[e]ither party to a contract may exercise a right of non-renewal at the expiration of the contract period set forth therein or, for a contract without a specific expiration date, on each January first occurring after the contract has been in effect for at least one year, upon sixty days[’] notice to the other party.”

. Defendants’ motion to dismiss the breach of contract cause of action was based upon their claims that the instant action is precluded by the earlier recovery under the doctrine of res judicata, theorizing that plaintiffs present complaint is based upon the same claims raised in the earlier case. Upon plaintiffs response to the motion, in which he clarified that the first cause of action herein is premised upon services rendered subsequent to the earlier recovery, defendants have withdrawn their motion as to the first cause of action for breach of contract.

. A claim for conversion fails for lack of an identifiable fund (see Luxonomy Cars v Citibank, N.A., 65 AD2d 549, 550 [2d Dept 1978]) and the claim for unjust enrichment fails, as plaintiff has conceded, because the existence of the participation agreements governing his compensation precludes recovery-in quasi contract (see Clark-Fitzpatrick, Inc. v Long Is. R.R. Co., 70 NY2d 382, 388 [1987]). An implied duty of good faith and fair dealing is subsumed within the contract.

. A health care provider has an implied right of action under Public Health Law § 4406-d (see Foong v Empire Blue Cross & Blue Shield, 305 AD2d 330 [1st Dept 2003]; Lewis v Individual Practice Assn. of W. N.Y., 187 Misc 2d 812, 816-817 [Sup Ct, Erie County 2001]). Defendants do not challenge plaintiffs right to sue under the statute.

. It is noted that plaintiff alleges that the services provided were “preauthorized” and “medically necessary.” Whether this is so, and the relevance of any prior approval, cannot be known as this point in the litigation.

. It is noted that the instant complaint does not concern termination of an existing contract, but only non-renewal. Under Public Health Law § 4406-d (3), defendants have a right to decline to renew plaintiffs contract so long as the reason was not exclusively the provider’s activities as set forth in Public Health Law § 4406-d (5).